**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**DAMONA G.,**

                **Plaintiff,**

v.

                                            **19-CV-992**

**COMMISSIONER OF SOCIAL SECURITY,**

                **Defendant.**

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Damona G. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 8, 14. For the following reasons, Plaintiff's motion (Dkt. No. 8) is granted, and the Commissioner's motion (Dkt. No. 14) is denied.

## BACKGROUND

On June 1, 2016, Plaintiff applied for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"), alleging that she became disabled on May 23, 2016,

by seizures and headaches.  Tr. at 163-75.[1]  Plaintiff's application was denied at the initial level and she requested review.  Tr. at 76-94, 98-105.  Administrative Law Judge Robert Wright ("the ALJ") conducted a hearing relating to Plaintiff's alleged disability on July 17, 2018.  Tr. at 50-75.  Plaintiff, who was represented by an attorney, testified at the hearing, as did an impartial vocational expert ("VE").  Tr. at 50-75.  On September 19, 2018, the ALJ issued a decision in which he found that Plaintiff was not eligible for benefits.  Tr. at 15-29.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-6.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Determining Whether a Claimant is Entitled to DIB and SSI**

The Commissioner shall not authorize DIB unless a claimant proves that she is disabled under the Act.  To prevail on a claim for DIB, a claimant must provide medical and other evidence to establish that she became disabled before her Title II insured status expired.  *See generally* 42 U.S.C. § 423.  Evidence of an impairment which reached disabling severity after an individual's insured status has expired, or which was exacerbated after such expiration, "cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired."  *Davis v. Colvin*, No. 6:14-CV-06373 (MAT), 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016) (citing *Arnone v. Bowen*, 882 F.2d

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 6.

34, 37-38 (2d Cir. 1989)) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.'. . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits.") (internal citations omitted)).  Moreover, a claimant must show through objective medical evidence that she became disabled prior to the expiration of insured status; she cannot sustain her burden of proof solely by means of conclusory, self-serving testimony that she was disabled at the crucial time.  *Gonzalez v. Schweiker*, 540 F. Supp. 1256, 1258 (E.D.N.Y. 1982); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).

There is no parallel insured status requirement for SSI.  To receive SSI under the Act, a claimant must establish through medical evidence that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i).  For both DIB and SSI claims, the evidence must show that the claimant is unable to work due to a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(5)(A).  Such impairments must be expected to result in death or have caused or be expected to cause disability for a continuous period of at least 12 months.  *Id.*; 20 C.F.R. §§ 404.1509, 416.909.  The claimant's impairments must also be so severe that she is unable to do her past work or any other substantial gainful work existing in significant numbers in the national economy based on her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner determines disability using a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 404.1527(d)(1), 416.927(d)(1).  The burden of showing that the claimant can perform other work existing in significant numbers in the national economy is on the Commissioner; however, the burden of proving disability is always on the claimant.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought.") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2007).  Section 405(g) limits the scope of the Court's review to two inquiries:  whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole.  *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003).  Substantial evidence is "more than a mere scintilla."  *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009).  "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion."  *Id.* (emphasis added and citation omitted).  The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard.  *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  The ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2021.  Tr. at 17.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 23, 2016, the alleged onset date.  Tr. at 17.  At step two, he found that Plaintiff had the following severe impairments:  seizure disorder, headaches, and depression.[2]

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at length in the papers.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 12.04 (Depressive, Bipolar, and Related Disorders).  Tr. at 18-19.  In reaching this conclusion, the ALJ found that Plaintiff had only a mild limitation in the domain of understanding, remembering, and applying information, and a moderate limitation in the domains of interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself.  Tr. at 19-20.

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), within the following parameters:  only unskilled work, which is simple, routine, and low stress (defined as having only occasional decision-making, work setting changes, and interaction with co-workers and no interaction with the public); and no work at heights or involving the operation of moving machinery or a motor vehicle.  Tr. at 21.  The ALJ found that Plaintiff could not perform her relevant work, but that there are jobs that exist in significant numbers in the national economy that she could perform, including the jobs of Cleaner (DOT 323.687-014), Hand Packager (DOT 559.687-074), and Assembler (DOT 706.687-010).  Tr. at 27-29.  Therefore, Plaintiff was not under a disability at any time from the alleged onset date through the date of the decision.  Tr. at 29.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 8, 14.  Plaintiff argues that because there was no functional assessment from a medical source in the record, the ALJ necessarily used his own "lay

6

judgment" in determining the RFC, and therefore his decision is not supported by substantial evidence.   No. 8-1, pp. 7-12.   The Commissioner argues that the medical evidence supports the ALJ's findings, and a supporting medical source opinion is not required.  Dkt. No. 14-1, pp. 9-14.  Having reviewed the record in its entirety, this Court finds that the RFC is not supported by substantial evidence.

**Plaintiff's RFC**

RFC represents the most the claimant can do despite her impairments.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Although the RFC finding is within the province of the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c), the burden of proving disability is on the claimant.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   An ALJ is not required to determine the RFC based on one particular medical opinion.  *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up.'").  Rather, the RFC is based on all the relevant evidence of record.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The Second Circuit Court of Appeals has held that the RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).   The ALJ is tasked with reaching an RFC finding based on the record as a whole; in this analysis, medical opinions are significant, but ultimately just one part of

the evidence.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

At the same time, an ALJ's assessment of a claimant's RFC must include a function-by-function analysis of the claimant's limitations in his or her work-related abilities.  20 C.F.R. § 404.1513(c)(1).  These assessments are generally based on one or more opinions from treating sources and/or consultative examiners.  *See Perkins v. Berryhill*, No. 17-CV-6327-FPG, 2018 WL 3372964, at *4 (W.D.N.Y. July 11, 2018) ("Without reliance on a medical source's opinion or a function-by-function assessment connecting the medical evidence to the RFC, the ALJ's decision leaves the Court with many unanswered questions and does not afford an adequate basis for meaningful judicial review.").  In assessing a claimant's RFC, an ALJ is not permitted to "arbitrarily substitute his own judgment for competent medical opinion."  *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014), *as amended* (July 30, 2014).

Where an ALJ identifies very specific restrictions in an RFC, they must be based on evidence within the record (including medical opinions), not the ALJ's own surmise.  *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014); *see Perkins*, 2018 WL 3372964, at *3 ("It is unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination without a relevant medical opinion.").  This is especially true where the claimant suffers from a complex and severe impairment, like a neurological disorder.  *Palascak v. Colvin*, No. 1:11-CV-0592(MAT), 2014 WL 1920510, at *8 (W.D.N.Y. May 14, 2014) (holding that "administrative law judges are

unqualified to assess residual functional capacity on the basis of bare medical findings in instances when there is a relatively high degree of impairment") (collecting cases).  The absence of evidence in the administrative record to support a function in the ALJ's RFC constitutes legal error, warranting remand.  *Alberalla v. Colvin*, No. 13-CV-881- RJA, 2014 WL 4199689, at *11 (W.D.N.Y. Aug. 22, 2014), *report and recommendation adopted*, No. 13-CV-881A, 2014 WL 5361950 (W.D.N.Y. Oct. 21, 2014).

In this case, the ALJ determined that Plaintiff is capable of performing light work, within certain parameters.  Tr. at 21.  Specifically, he found that Plaintiff can perform simple, unskilled, routine, and low stress work, with only occasional decision-making, changes in work setting, or interactions with coworkers, and no interaction with the public.  Tr. at 21.  He restricted Plaintiff from performing work at heights, work involving the operation of moving machinery, or a motor vehicle.  Tr. at 21.  These restrictions are highly specific.  At the same time, a review of the record reveals that there is not a single opinion from a treating source or a consultative examiner as to the functional limitations caused by Plaintiff's seizure disorder, headaches, and depression.  Tr. at 17.  This Court finds the lack of any medical opinion troubling given the nature of Plaintiff's impairments, especially her seizure disorder, which the ALJ found to be severe.

Admittedly, the primary reason why the record contains no functional assessment from a treating source is because Plaintiff, by her own admission, never saw a neurologist for treatment despite being advised to so during her numerous visits to the emergency room.  Tr. at 396, 398 (noting that Plaintiff was told that "[i]t is very important that [she] follow up with Neuro as an outpatient, she has failed to do so thus far").  Rather,

9

whenever Plaintiff experienced a seizure, usually after not taking her anti-seizure medication (Keppra) or consuming alcohol and marijuana, she would go to the emergency room and "get discharged home" with Keppra. Tr. at 24, 396 (Plaintiff reporting that she "goes to the ER after each episode and gets discharged home on the same medication"), 457 (Plaintiff admitting after having a seizure that "she did not take her Keppra yesterday"); 507 (Plaintiff reporting at the ER after seizure that she "has not taken her Keppra in 2 weeks because she's been out of it"); 509 (noting that Plaintiff presented with a seizure and was "noncompliant with Keppra"); 516 (Plaintiff reporting to the ER that she had a seizure after consuming "3 alcoholic beverages and smok[ing] marijuana, which she believes might be the inciting factor"). Plaintiff also never went to a mental health counselor and declined anti-depressant medication, despite claiming to be debilitated by depression. Tr. at 498 (noting that Plaintiff "has never seen a psychiatrist in the past"), 501 (noting that Plaintiff refused "trialing any antidepressants").

This Court agrees that Plaintiff's failure to see a neurologist or a mental health practitioner, her non-compliance with medication, and her conduct in consuming substances that she knew would induce a seizure, all weigh against a finding of disability. Tr. at 24-26. However, given that there was not a single opinion pertaining to Plaintiff's physical or mental limitations in the record from either a treating source or a consultative examiner, it is not clear how the ALJ was able to reach an RFC with such specific limitations.

"An ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013). However, a consultative examination should be ordered where "the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. 20 C.F.R. §§ 404.1519a(b), 416.919a(b). In cases where the record contains medical findings diagnosing the claimant's impairments without relating that diagnosis to functional capabilities, "the general rule is that the Commissioner may not make the connection himself." *Kain v. Colvin*, 2017 WL 2059806, at *3 (W.D.N.Y. May 15, 2017) (quoting *Englert v. Colvin*, 2016 WL 3745854, at *4 (W.D.N.Y. July 8, 2016)); *Henry v. Berryhill*, 2018 WL 6039297, at *6 (W.D.N.Y. Nov. 19, 2018) (noting that "the overwhelming majority of cases in this District hold" that a functional medical opinion is required in order for a claimant's RFC to be properly determined).

This is especially true in cases where the claimant suffers from severe impairments that are complex. *Manson v. Colvin*, 2016 WL 4991608, at *11 (N.D.N.Y. Sept. 19, 2016) (citing *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)) (holding in a case where the claimant suffered from myofascial pain syndrome and fibromyalgia that "[t]he ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion"); *Judd v. Berryhill*, 2018 WL 6321391, at *7 (W.D.N.Y. Dec. 4, 2018) (finding that the ALJ was not permitted to make a common sense judgment about the plaintiff's lumbar spine and brain injury impairments to determine claimant's residual functional capacity because the medical evidence contained complex medical findings); *Caraco v. Comm'r of Soc. Sec.*, 2020 WL 415939, at *4 (W.D.N.Y. Jan. 24, 2020) (stating in a case where the claimant suffered from

the severe impairments of cervical spine degenerative disc disease, spondylosis, and vascular/migraine headaches that "this is not the kind of minor physical impairment that courts have found an ALJ qualified to assess based on common sense"); *Ruffin v. Comm'r of Soc. Sec.*, 2020 WL 419365, at *2 (W.D.N.Y. Jan. 27, 2020) (finding that claimant's case was not one where the claimant had only "minor impairments" such that the ALJ could make a "common sense judgment" about how it impacted his ability to work).

In this case, the ALJ found that Plaintiff suffered from the severe impairments of seizure disorder, headaches, and depression. Tr. at 17. Seizure disorder is a complex neurological condition with many possible triggers that does not lend itself to lay interpretation. As such, it was impermissible for the ALJ to make "common sense" judgments about how her seizure disorder affected her ability to perform work-related functions.

Consistent with the foregoing, this Court finds that the RFC is not supported by substantial evidence because there is no functional assessment anywhere in the record. *See Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (remanding case where the ALJ failed to obtain a medical source statement, and "[t]he medical records discuss [the plaintiff's] illnesses and suggest treatment for them, but offer no insight into how her impairments affect or do not affect her ability to work"); *Timothy S. v. Comm'r of Soc. Sec.*, No. 19-cv-1141, 2021 WL 661392, at *3 (W.D.N.Y. Feb. 18, 2021) (requiring remand where, "absent the support of a medical opinion or other functional assessment by a medical source," the ALJ improperly relied on treatment notes that did not "include any functional assessment of plaintiff's physical abilities").

Although it appears doubtful that Plaintiff will be able to meet her ultimate burden of showing that she is disabled, this case is remanded for the limited purpose of ordering a consultative exam for Plaintiff and formulating an RFC based on the exam findings.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is DENIED.  This case is remanded to the Commissioner to order a consultative examination for Plaintiff and to reformulate the RFC based on the exam findings.  The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         March 22, 2021

                                        *s/ H. Kenneth Schroeder, Jr.*
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**